[No. B065489. Second Dist., Div. Seven. Mar. 9, 1993.]

MARK KEVIN FITZPATRICK, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

**COUNSEL**

Philip A. Rafferty for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, and Henry G. Ullerich, Acting Assistant Attorney General, for Defendant Respondent.

## Opinion

**JOHNSON, J.**—Mark Fitzpatrick appeals from the denial of his petition to set aside an order by the Department of Motor Vehicles (DMV) suspending his driving privilege for one year for failure to submit to or complete a chemical test of his breath, urine or blood to determine his blood-alcohol level. (Veh. Code, §§ 23157, 13353.) We find Fitzgerald was improperly denied the opportunity to confront and cross-examine the police officer who accused him of failing to take the tests. Therefore, we reverse and remand the matter to the trial court for further proceedings.

### Facts and Proceedings Below

The facts relating to Fitzpatrick's alleged failure to comply with the testing requirements are contained in a sworn statement accompanied by an arrest report and breathalyzer test results submitted to the DMV by Los Angeles Police Officer Mario Cruz in accordance with Vehicle Code section 23158.2.

Officer Cruz stated that at approximately 9 p.m. he observed Fitzpatrick exit from a private driveway without yielding to oncoming traffic. Fitzpatrick then ran a red light and drove 60 m.p.h. in a 35 m.p.h. zone. When stopped, Cruz observed Fitzpatrick had bloodshot, watery eyes, an unsteady gait, slurred speech and the odor of alcohol on his breath. Cruz arrested Fitzpatrick on suspicion of drunk driving. Cruz advised Fitzpatrick state law required him to submit to a chemical test to determine the alcoholic content of his blood and that he had the choice of a breath, urine or blood test.

According to Officer Cruz, Fitzpatrick initially chose a urine test. That test was suspended, however, because Fitzpatrick attempted to dilute his urine with water from the toilet bowl. Fitzpatrick then requested a breath test which was administered. This test too was suspended after five attempts because of "insufficient breath." Fitzpatrick was then admonished, "If you cannot . . . complete the test you choose, you must submit to and complete the remaining test. Will you take a blood test?" To which Fitzpatrick responded, "I already completed two tests. I complied with the law." Treating this statement as a refusal to take the blood test, Officer Cruz confiscated Fitzpatrick's driver's license, issued him a 45-day temporary license and served him with a notice of suspension of his driving privileges.

Fitzpatrick timely requested an administrative hearing pursuant to Vehicle Code section 13558.

The DMV initially scheduled a hearing for August 9, 1991. That hearing was continued to September 4th on DMV's own motion because it had not

complied with Fitzpatrick's discovery request or his request a subpoena be issued for Officer Cruz. On September 4th the hearing was again continued because the DMV had not issued the subpoena for Officer Cruz. A new hearing date of September 23d was scheduled. On September 6th a subpoena was served on Officer Cruz for the September 23d hearing. On the day scheduled for the hearing a DMV employee contacted Fitzpatrick's attorney and advised him Officer Cruz was unavailable and the DMV was continuing the hearing to October 15th. On October 11th, Fitzpatrick's attorney attempted to serve a subpoena on Officer Cruz for the October 15th hearing. The subpoena officer at Officer Cruz's division refused to accept the subpoena on the ground Cruz was injured and unavailable.

Fitzpatrick and his counsel appeared at the October 15th hearing. Fitzpatrick objected to proceeding with the hearing on the ground Officer Cruz had not responded to the September 6th subpoena and the Los Angeles Police Department refused to even accept a subpoena for the October 15th hearing. The hearing officer stated the DMV had also attempted to subpoena Officer Cruz to the hearing without success. The hearing officer offered to continue the hearing so that Fitzpatrick could subpoena Cruz's partner, Officer Stringer. Fitzpatrick rejected this offer on the ground Cruz was the witness he wanted. The hearing officer then went off the record and called someone. Back on the record, the hearing officer stated, "[Cruz is] injured, and . . . indefinitely unavailable, and I've been informed by our staff that he was injured on duty and would be indefinitely out, and that its no use to subpoena somebody who's not going to be present . . . and so I will proceed with this hearing without . . . Officer Cruz." Fitzpatrick renewed his objection to proceeding without Officer Cruz. The hearing officer responded. "[Y]our objection is overruled based on the fact that Officer Cruz is unable to appear because he is injured on duty as I have been informed for an indefinite period, and we waited two months now . . . . So we'll proceed."

Over Fitzpatrick's hearsay objections, the hearing officer admitted into evidence Officer Cruz's sworn statement relating the facts of Fitzpatrick's refusal to complete any of the three chemical tests along with the arrest report and breathalizer results. This was the extent of the DMV's case. Fitzpatrick did not testify. The hearing officer upheld the suspension.

Fitzpatrick then filed a petition in superior court to set aside the suspension order.[1] The petition was denied. This appeal followed.

---

[1]Vehicle Code section 13559 provides for superior court review of an order suspending a driver's license. The statute restricts review to the record of the hearing. The court may order the DMV to rescind its suspension if it finds "the department exceeded its constitutional or

## DISCUSSION

The parties' briefs focus principally on the issue of whether the DMV must produce evidence the breathalyzer test results were reliable or whether it can rely on the presumption "official duty has been regularly performed." (Evid. Code, § 664.) If Fitzpatrick's driver's license had been suspended because the test results showed he had been driving with a blood-alcohol level of .08 percent or more, the burden of proof as to the reliability or unreliability of the test results would be a relevant and critical issue. (See Veh. Code, § 13353.2.)[2] But here, Fitzpatrick's license was suspended for refusal to complete the tests. (Veh. Code, § 13353.) Thus, for purposes of this case, it is irrelevant whether the machine reported "insufficient breath" because it was malfunctioning or because Fitzpatrick could not or would not blow hard enough into the mouthpiece. Fitzpatrick remained obligated to complete the only test remaining: the blood test.

■ *Gobin* v. *Alexis* (1984) 153 Cal.App.3d 641 [200 Cal.Rptr. 397] is directly on point. *Gobin* held if a breath test is chosen but the machine malfunctions, it is a refusal not to take another test. The court reasoned:

"There is no merit to appellant's argument that by merely blowing into the machine three times, he had completed the required test. Such an interpretation allowing a test to be deemed completed, *regardless of whether the breath samples were able to be analyzed* or whether the machine was functioning properly, violates the purpose of Vehicle Code section 13353 . . . which is to obtain the best evidence of the alcoholic content of the motorist's blood at the time of the arrest and to provide a fair, efficient and accurate system of determining the motorist's blood alcohol content." (153 Cal.App.3d at p. 649, italics added.)

We note Officer Cruz did not treat Fitzpatrick's failure to produce a measurable breath sample as a refusal of the test. Indeed, Cruz did not treat Fitzpatrick's alleged dilution of his urine sample with water from the toilet as a refusal, although he could have. (*Skinner* v. *Sillas* (1976) 58 Cal.App.3d 591, 598 [130 Cal.Rptr. 91].) It was only after Fitzpatrick failed to complete the urine and breath tests and refused to submit to the blood test that Officer Cruz served the notice of suspension on him.

---

statutory authority, made an erroneous interpretation of the law, acted in an arbitrary and capricious manner, or made a determination which is not supported by the evidence in the record . . . ."

[2]Division Three of this district ruled against Fitzpatrick's position on this issue in *Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133 [7 Cal.Rptr.2d 818]. Fitzpatrick argues *Davenport* and other cases reaching the same conclusion were wrongly decided. For the reasons explained below we do not reach the burden of proof issue in this case.

 The pivotal issue in this case is whether Fitzpatrick was denied his constitutional and statutory rights to confront and cross-examine his accuser, Officer Cruz, by the DMV's refusal to enforce its subpoena for Cruz's attendance at the hearing.

 It is now well settled, at least in the Courts of Appeal, a driver's license suspension may be upheld solely on the basis of the officer's sworn statement pursuant to Vehicle Code section 23158.2. (*Snelgrove* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1369 [240 Cal.Rptr. 281] and cases cited therein; but see *Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532 [189 Cal.Rptr. 512, 658 P.2d 1313].) However, these Courts of Appeal decisions are all premised on the driver's right to confront and cross-examine the officer at the administrative hearing through use of the DMV's subpoena power (Gov. Code, § 11510). (*Snelgrove* v. *Department of Motor Vehicles*, *supra*, 194 Cal.App.3d at p. 1376; *Hughes* v. *Alexis* (1985) 170 Cal.App.3d 800, 811 [216 Cal.Rptr. 550]; *Mackler* v. *Alexis* (1982) 130 Cal.App.3d 44, 61, 62 [181 Cal.Rptr. 613].) As the court stated in *Burkhart* v. *Department of Motor Vehicles* (1981) 124 Cal.App.3d 99, 110 [177 Cal.Rptr. 175], "The licensee has an absolute right to compel [the arresting officer's] attendance if he requests a subpena, has it served and pays the statutory fee. [Citations.] In the event the licensee deems the officer's presence critical to his defense . . . ."

 As we pointed out above, Fitzpatrick had a subpoena issued and served on Officer Cruz for the September 23d hearing. Officer Cruz did not appear. Fitzpatrick attempted to serve a subpoena on Cruz for the October 15th hearing but the police department would not accept the subpoena on the ground Cruz was on disability leave.

Government Code section 11525 provides, in relevant part: "If any person in proceedings before an agency . . . refuses to respond to a subpoena . . . , *the agency shall certify the facts to the superior court* . . . . The court shall thereupon issue an order directing the person to appear before the court and show cause why he should not be punished as for contempt." (Italics added.) In the present case, the DMV failed to proceed under Government Code section 11525 to enforce Fitzpatrick's subpoena as well as its own.

The right to confront and cross-examine Officer Cruz was critical to Fitzpatrick's defense to the charge he refused to complete the required chemical tests. The issues at the hearing were limited by statute to: (1) whether there was reasonable cause for the officer to believe the driver was

driving under the influence of alcohol or drugs; (2) whether the driver was lawfully arrested; (3) whether the driver was told refusal to submit to or complete one of the three tests would result in suspension or revocation of the driver's license; and (4) whether the driver refused to submit to or complete one of the tests. (Veh. Code, § 13353.) Officer Cruz was the officer who filed the report concerning Fitzpatrick's alleged refusal to complete the tests and he was the one who filed the accompanying arrest report. Impeaching or undermining through cross-examination Officer Cruz's hearsay testimony regarding probable cause and the alleged tampering with the urine specimen provided Fitzpatrick's only realistic hope of defeating the license suspension. (Cf. *Davenport* v. *Department of Motor Vehicles, supra,* 6 Cal.App.4th at pp. 138-139 [suspension upheld based on officer's hearsay report despite contrary hearing testimony by driver and expert witness].)

The DMV argues Fitzpatrick did not exercise due diligence in securing Officer Cruz's presence at the hearing. True, Fitzpatrick could have commenced proceedings himself in superior court to enforce the agency's mandatory duty under Government Code section 11525. (*Gilbert* v. *Superior Court* (1987) 193 Cal.App.3d 161, 167 [238 Cal.Rptr. 220]; and see *Nick* v. *Department of Motor Vehicles* (1993) 12 Cal.App.4th 1407, 1417 [16 Cal.Rptr.2d 305]. We do not believe, however, that in a simple license suspension hearing, the driver should be required to make herculean efforts to enforce an "absolute right to compel [the arresting officer's] attendance" especially where the DMV itself had subpoenaed the officer and he had failed to appear. The attorney fees and filing fees involved in a separate mandamus proceeding when added to the $150 witness fee for a peace officer could well be prohibitive to the ordinary citizen seeking a fair hearing from a bureaucracy he already supports with his taxes and license fees. Moreover, it was not clear until the October 15th hearing the DMV would not enforce the subpoena. By that time it was too late for Fitzpatrick to attempt to obtain a court order requiring DMV to enforce the subpoena because the hearing officer insisted on proceeding with the hearing.

Finally, we observe the DMV's reason for refusing to enforce the subpoena under Government Code section 11525, that Officer Cruz was on disability leave from the police department, was erroneous. There was no evidence Cruz's disability prevented him from testifying at the hearing. Furthermore, the fact Cruz was not on active duty as a police officer was not an excuse for his failure to respond to the subpoenas. (*Mackler* v. *Alexis, supra,* 130 Cal.App.3d at pp. 62-63.)

For the reasons set forth above, we conclude Fitzpatrick was denied his constitutional and statutory rights to confront and cross-examine the witness

against him and that the DMV made an erroneous interpretation of the law. Therefore, the order suspending Fitzpatrick's license should be rescinded. (Veh. Code, § 13559.)[3]

DISPOSITION

The judgment of the superior court is reversed, and the cause remanded with instructions to enter a new judgment ordering the DMV to rescind its suspension of Fitzpatrick's driver's license. Appellant is awarded costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

---

[3]This case is not moot even though Fitzpatrick's one-year license suspension ended in October 1992. Unless this suspension is rescinded, he would face a more severe penalty should he be found to have failed to submit to or complete a chemical test on a subsequent occasion. (Veh. Code, § 13353.)